IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:19-CV-118-RJ

EMILIE SMITH,

    Plaintiff/Claimant,

v.

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-20, -22] pursuant to Fed. R. Civ. P. 12(c). Claimant Emilie Smith ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. The parties have consented to the jurisdiction of a magistrate judge [DE-16, 17], and the cross motions are considered here pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on February 5, 2016, alleging disability beginning November 16, 2015. (R. 16, 189–92). Her claim was denied initially and upon reconsideration. (R. 16, 96–119). A hearing before the Administrative Law

Judge ("ALJ") was held on March 12, 2018, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 16, 69–95). On June 12, 2018, the ALJ issued a decision denying Claimant's request for benefits. (R. 13–31). On May 6, 2019, the Appeals Council denied Claimant's request for review. (R. 1-6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d

438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors: (1) the ALJ failed to incorporate limitations in her residual functional capacity ("RFC") determination arising from her need to elevate her lower extremities, and (2) the ALJ failed to perform a function by function assessment

3

of her ability to walk. Pl.'s Mem. [DE-21] at 10-17.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since November 16, 2015, the alleged onset date. (R. 18). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease (DDD) of the lumbar and thoracic spine; right, left extremity native artery claudication; diabetes mellitus (DM) with neuropathy; and morbid obesity. *Id.* The ALJ also found Claimant had the nonsevere impairments of hypertension, hyperlipidemia, nodular goiter, anemia, gastroesophageal reflux disease, carpal tunnel syndrome, inflammatory polyarthritis, rosacea, and chest pain (unspecified). (R. 18–19). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19–20).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] requiring the following restrictions:

> she can never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs; occasionally kneel, crouch crawl, balance and stoop; and frequently but not continuous handle and finger with the dominant right hand. The claimant must avoid concentrated exposure to respiratory irritants such as fumes, odors, dust, gases and poorly ventilated areas as well as all exposure to hazardous machinery and unprotected heights. Further, the claimant is able to perform the job, either sitting or standing, as desired (such as in bench work occupations).

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

(R. 20–24). At step four, the ALJ concluded Claimant is unable to perform her past relevant work as an instructor, vocational training, or cosmetologist. (R. 24). At step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 25).

## V. DISCUSSION

Claimant contends that the ALJ erred in formulating her RFC by failing to incorporate limitations addressing Claimant's need to elevate her lower extremities due to swelling and pain and by failing to conduct a function-by-function analysis relating to her ability to walk. Pl.'s Mem. at 10–17.

An individual's RFC is the capacity he possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1), *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5.

Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ

must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence" and "how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." S.S.R. 96-8p, 1996 WL 374184, at *7; *see also Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (explaining the ALJ must "build an accurate and logical bridge from the evidence to his conclusion").

Claimant contends that the ALJ failed to sufficiently account for her need to elevate her lower extremities and restrictions on walking in the RFC. Claimant argues that the RFC is not supported by substantial evidence because Claimant's testimony and the medical records demonstrate the need for an accommodation of these restrictions. The court disagrees.

The ALJ provided three justifications for formulating an RFC less restrictive than Claimant's testimony: first, he concluded that she reported a level of restriction not entirely consistent with the medical evidence and other evidence in the record; second, he found that the record shows that Claimant received conservative treatment inconsistent with that one would expect for a disabled individual; and third, he noted that the record lacked any medical source statement providing opinion evidence supporting Claimant's alleged limitations.

When assessing a claimant's RFC, it is within the province of the ALJ to determine whether a claimant's statements are consistent with the medical and other evidence. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor

6

and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016) (effective Mar. 28, 2016); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes that determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 16-3p, 2016 WL 1119029, at *4; *Hines*, 453 F.3d at 564–65.

Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors concerning the "intensity, persistence and limiting effects" of the claimant's symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c)(3) (showing a complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence, *Craig*, 76 F.3d at 595–96, but neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." S.S.R. 16-3p, 2016 WL 1119029, at *6; *see Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011). "The ALJ cannot 'reject a claimant's statements about the intensity and persistence of . . .

7

pain or other symptoms' or about the effect of those symptoms on a claimant's ability to work 'solely because the available objective medical evidence does not substantiate them.'" *Ladda v. Berryhill*, No. 17-1366, 2018 WL 5096065, at *4 (4th Cir. Oct. 18, 2018).

Here, the ALJ summarized Claimant's testimony as follows:

> The claimant's primary complaints at the hearing centered on constant hands, legs, and feet pain, weakness, numbness, tingling, and burning secondary to neuropathy. She asserted back pain that only limits her ability to lift objects. She also asserted peripheral artery disease that significantly limits her ability to stand for prolonged periods, which requires her to elevate her legs at least a few days a day due to swelling. According to the claimant, she experiences falls due to numbness. She confirmed that she is right hand dominant. She said that she has difficulty climbing stairs, opening jars, and tying her shoes. She noted that she drops things such as dishes, shampoo, silverware, but mostly bigger things like plates and glasses. She endorse decreased motor and grip strength. She can stand for no more than 15-20 minutes. She can sit for 20 minutes before needing to alternate positions. The claimant did not identify any medication side effects. She acknowledged that despite her ongoing complaints of neuropathy symptoms, she has yet to be recommended for any surgery or injections to help lessen her symptoms.
>
> As for her daily activities, the claimant did not testify that she requires help for personal care tasks. She is able to prepare simple meals due to dropping things and inability to stand for prolonged periods. She can perform some household chores, but requires rest breaks due to fatigue and pain. She acknowledged that she can grocery shop alone for little items, but requires the assistance of her daughter and husband for regular shopping. She is able to drive six miles one-way to drop off and pick her daughter up from the bus stop on a daily basis.

(R. 21).

The ALJ concluded that Claimant's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 21). In support of this conclusion, the ALJ reviewed the medical evidence relating to Claimant's symptoms.

Specifically, the ALJ acknowledged that the treatment records confirm Claimant's history and complaints of musculoskeletal pain, but concluded that she was capable of performing the

8

RFC formulated. He reviewed diagnostic testing results which failed to substantiate the limitations alleged by Claimant. Specifically, a January 2016 MRI showed minimal degenerative changes of the lumbar spine with no significant central canal or exit foraminal stenosis at any level. March 2016 EMG studies did not reflect lumbrosacral radiculopathy, and indicated normal insertional activity of lumbrosacral paraspinal muscles. No acute abnormality was indicated in three views of Claimant's sacroiliac joints taken in December 2016. Radiological tests from July 2017 of Claimant's thoracic spine showed degenerative changes at the mid and lower thoracic spine but MRI studies were unremarkable. The ALJ also noted that at times Claimant's descriptions of her symptoms to her treatment providers were not consistent with her allegations. He noted that in December 2016, Claimant denied having any back pain, bone/joint symptoms, swelling, muscle weakness, gait abnormality, and myalgia.

The ALJ also discussed Claimant's treatment records for her diabetes mellitus and neuropathy. He confirmed the existence of Claimant's complaints of symptoms and noted that EMG/nerve conduction studies were consistent with polyneuropathy but that Claimant was generally within normal blood glucose levels and hemoglobin A1C levels.

Similarly, the ALJ reviewed the evidence relating to Claimant's right leg artery claudication. Again, he noted the presence of her complaints of symptoms of redness, numbness and tingling, swelling, and difficulty walking. The ALJ referenced Claimant's treatment by David Weatherford, M.D., a vascular surgery specialist in November 2015. An arterial duplex evaluation conducted demonstrated minimal diffuse plaque with no evidence of significant stenosis. The ALJ noted that Dr. Weatherford indicated that Claimant's peripheral vascular state was stable and could be managed conservatively. Dr. Weatherford recommended antiplatelet therapy, dietary lipid control, exercise, and smoking cessation. No laboratory or diagnostic testing is documented after

9

November 2015 relating to a primary care diagnosis of peripheral vascular disease.

In addition to a lack of diagnostic test results and evaluations corroborating Claimant's report of symptoms, the ALJ noted that her treatment overall was generally conservative in nature. For example, he noted that there was no indication in the record that any specialist recommended her for back surgery. He cited Dr. Weatherford's determination that Claimant's vascular condition could be managed conservatively, and also noted that there was evidence in the record that Claimant's treatment was generally effective. *See Dunn v. Colvin,* 607 F. App'x 264, 273 (4th Cir. 2015) ("[T]his Court has long held that it is appropriate for the ALJ to consider the conservative nature of a plaintiff's treatment–among other factors–in judging the credibility of the plaintiff.").

Finally, the ALJ noted that the record did not contain any medical source statements prepared by an accepted treating healthcare provider that support the limitations alleged by Claimant. The ALJ is required to assign weight to medical opinions, not medical evidence. 20 C.F.R. § 404.1527(c). Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis, and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). "Only those statements . . . that reflect judgments regarding a claimant's prognosis or limitations, or the severity of symptoms," and not those which merely report subjective complaints of the claimant's pain, constitute medical opinions as defined in the regulations. *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5366967, at *11 (E.D.N.C. Aug. 30, 2013) (citations omitted), *adopted by* 2013 WL 5350870 (E.D.N.C. Sept. 24, 2013).

While Claimant cites to a number of treatment records reflecting her complaints of pain,

10

they do not contain medical opinions, i.e., judgments regarding prognosis, limitations, or severity of Claimant's conditions; rather, they reflect only Claimant's subjective symptoms, the results of examinations and objective testing, and diagnoses. *See Graham v. Berryhill,* No. 7:18-CV-22-FL, 2019 WL 1272545, at *6 (E.D.N.C. Jan. 10, 2019) (finding a physician's record of examination reflecting the claimant's subjective symptoms, the results of objective testing, and diagnoses but containing no judgments regarding prognosis, limitations, or severity was not a medical opinion that the ALJ was required to discuss) (citations omitted).

For example, Claimant refers to a treatment note wherein Dr. Weatherford states that her stable peripheral vascular state can be managed conservatively and noted the "importance of antiplatelet therapy, dietary lipid control, exercise and smoking cessation." (R. 354). The treatment note goes on to state that "[d]iscussion of edema and proper edema control including elevation, compression and avoidance of contributing factors." *Id.* This notation regarding a discussion of extremity elevation does not rise to the level of a judgment regarding prognosis, limitations, or severity of Claimant's conditions or directive by Dr. Weatherford that leg elevation was required throughout the course of her workday, as Claimant appears to characterize the discussion. Indeed, at the hearing, the ALJ inquired whether there was any record evidence demonstrating a requirement that Claimant elevate her feet and her counsel acknowledged that he was not aware of any such prescription. (R. 94–95).

In addition, the ALJ did consider the assessments provided by the State agency medical consultants who opined that Claimant was capable of performing medium exertional work and could frequently climb ladders, ropes or scaffolds, and stop, but otherwise opined she was capable of unlimited postural activities. The ALJ gave credit to Claimant's testimony in only affording these opinions partial weight and concluded that she is more limited than the consultants opined.

11

Substantial evidence supports the ALJ's conclusions and he has offered sufficient explanation for formulating an RFC less restrictive than Claimant's testimony. Accordingly, the court rejects Claimant's contentions with respect to this argument.

Relatedly, the same analysis applies to Claimant's arguments concerning her ability to walk. As with her testimony concerning elevation of lower extremities, the ALJ acknowledged Claimant's testimony concerning her limitations in her ability to walk. But the ALJ did not fully credit her testimony for the same reasons as explained above. First, the medical records are replete with indications of Claimant having normal gait or denying gait abnormality. (R. 308, 330, 530, 584, 587, 604, 619, 781, 786, 789, 793, 798, 848, 852, 857, 923, 930, 936, 942, 948, 1009, 1010). Second, Claimant received only conservative treatment, and no medical opinion evidence supports the limitations alleged by Claimant with respect to her ability to walk. For these reasons, substantial evidence supports the ALJ's determination, and he did not err in formulating Claimant's RFC.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgement on the Pleadings [DE-20] is DENIED, Defendant's motion for Judgement on the Pleadings [DE-22] is ALLOWED, and the final decision of the Commissioner is AFFIRMED.

SO ORDERED, this the 17 day of September, 2020.

Robert B. Jones, Jr.
United States Magistrate Judge

12